## CIRCUIT COURT OF ROCKINGHAM COUNTY

Carol R. Schikman

v.

Gene Branum

July 14, 2006

Case No. CL05-000031

BY JUDGE JOHN J. MCGRATH, JR.

This matter came to be heard on July 3, 2006, on the Defendant's motion *in limine* to preclude the Plaintiff's two medical expert witnesses on the standard of care. After hearing oral arguments by counsel and reviewing the relevant case law, the Court finds that the Defendant's motion shall be sustained as to Dr. Kovalcik and overruled as to Dr. Samuel.

*Facts*

This is a medical malpractice action arising from a laparoscopic colectomy performed by Dr. Gene Branum on November 4, 2002, to remove tumors from the plaintiff's colon. The plaintiff's left ureter was injured during the procedure, allegedly as a result of Dr. Branum's negligent failure to visualize and protect the ureter.

The plaintiff identified two expert witnesses who are expected to testify that Dr. Branum breached the standard of care by failing to properly visualize and protect the ureter. Dr. Paul Kovalcik, M.D., practices in Chesapeake, Virginia, and is Board Certified in both General Surgery and Colon and Rectal Surgery. His practice is limited to the performance of colon and rectal surgery, including open colectomies. However, he has never performed or been trained to perform laparoscopic procedures. He stated during his deposition that he does not consider himself an expert on

the laparoscopic technique and that he could not speak from personal experience on exactly how a surgeon would protect the ureter during such procedures. Dr. Kovalcik would testify that the standard of care for laparoscopic and open colectomies is the same with respect to avoiding injury to the patient's ureters and detecting such injuries prior to concluding the surgery.

The plaintiff's second expert witness, Dr. Isaac Samuel, is a Board Certified General Surgeon and an Assistant Professor of Surgery at the University of Iowa Hospitals and Clinics where he specializes in laparoscopic bariatric surgery. While he has never performed a laparoscopic colectomy, he regularly performs open colectomies and laparoscopic procedures in the abdominal area. He would testify that the obligation of the surgeon to identify and protect the patient's ureters during a colectomy is the same whether the procedure is performed in a laparoscopic or open fashion. He would also testify that a surgeon's ability to visualize the patient's organs during a laparoscopic abdominal surgery is actually enhanced due to the use of the laparoscopic camera.

After depositions of Dr. Kovalcik and Dr. Samuel, the defendant filed a motion to preclude their testimony as expert witnesses because neither performs laparoscopic colectomies or other procedures that require them to laparoscopically visualize and protect the ureter. The defendant asserts that they are not qualified under § 8.01-581.20 of the Code of Virginia, 1950, as amend, to offer standard of care testimony in this case.

*Analysis*

The party opposing the proffered expert testimony has the burden of showing that the witnesses do not qualify to testify as to the standard of care. Section 8.01-581.20(A) of the Code of Virginia, 1950, as amended, provides in relevant part:

> A witness shall be qualified to testify as an expert on the standard of care if he demonstrates expert knowledge of the standards of the defendant's specialty and of what conduct conforms or fails to conform to those standards and if he has had active clinical practice in either the defendant's specialty or a related field of medicine within one year of the date of the alleged act or omission forming the basis of the action.

Both Dr. Kovalcik and Dr. Samuel had active clinical practices in colorectal surgery within one year of the plaintiff's November 4, 2002, laparoscopic colectomy. At issue in this case is whether they satisfy the knowledge requirement.

The leading case on this subject is *Wright v. Kaye*, 267 Va. 510, 593 S.E.2d 307 (2004). In *Wright*, the plaintiff suffered an injury to her bladder during a laparoscopic procedure to remove an urachal cyst. 267 Va. at 515-16, 593 S.E.2d at 309. She alleged that the defendant negligently inserted surgical staples into her bladder after failing to properly visualize it and that he further violated the standard of care by failing to inspect the bladder prior to concluding the surgery. The plaintiff's expert witnesses were specialists in obstetrics and gynecology with extensive experience in laparoscopic surgery in the female pelvic region. *Id.* at 518, 593 S.E.2d 311. They had often removed cysts from near the bladder with the same type of surgical stapler used by the defendant, but none had performed an urachal cystectomy. *Id.* The trial court held that the proffered experts' lack of experience with the exact procedure performed on the plaintiff precluded them from having the requisite expert knowledge. *Id.* at 517, 593 S.E.2d at 310. The Supreme Court reversed, finding that their experience with laparoscopic surgery in the same part of the body and using the same surgical instruments qualified them as experts. *Id.* at 520, 593 S.E.2d at 312.

The qualification of physician expert witnesses was also at issue in *Lawson v. Elkins*, 252 Va. 352, 477 S.E.2d 510 (1996). The plaintiff in that case alleged that the defendant breached the standard of care in finding that she was an appropriate candidate for chemonucleolysis. The plaintiff's proposed expert witness was a neurosurgeon who admitted that he had never performed a chemonucleolysis procedure on a patient. *Id.* at 355, 477 S.E.2d at 511. His knowledge of the procedure was limited to his participation in one eight-hour seminar on the subject. *Id.* The Supreme Court held that the trial court did not abuse its discretion by refusing to qualify the neurosurgeon as an expert witness as to the procedure of chemonucleolysis. *Id.*

The first step in determining whether the proffered experts may testify is to define the relevant medical procedure at issue in the case, "read in the context of the actions by which the defendant is alleged to have deviated from the standard of care." *Hinkley v. Koehler*, 269 Va. 82, 89, 606 S.E.2d 803, 807 (2005), *quoting Wright*, 267 Va. at 523, 593 S.E.2d at 314. The plaintiff would define the relevant medical procedure broadly as an uncomplicated colectomy. The use of laparoscopic techniques, however, is important to the plaintiff's allegations in her Motion for Judgment.

278

The performance of a surgery laparoscopically rather than openly fundamentally changes how the surgeon conducts the procedure. While he is very accomplished in performing open colorectal surgery, Dr. Kovalcik conceded during his deposition that he has no expertise in laparoscopic procedures and that he has never performed one. His testimony on how the ureter is visualized during a laparoscopic colectomy was based on speculation rather than first-hand knowledge.

Dr. Samuel, by contrast, has personal experience with how laparoscopy impairs or enhances a surgeon's ability to visualize internal organs. Although he has never performed the specific procedure at issue, his experience with both laparoscopic abdominal surgery and open colectomies would enable him to testify about how Dr. Branum should have visualized and protected the ureter during a laparoscopic colectomy and whether he violated the standard of care.

Consequently, the Court finds that Dr. Kovalcik does not have the requisite knowledge to testify as to the standard of care in this case and that Dr. Samuel is qualified to testify.

## *Order*

For the reasons set forth above, it is hereby adjudged, ordered, and decreed that the Defendant's Motion *in limine* to Exclude Plaintiff's Experts is sustained as to Dr. Paul Kovalcik and overruled as to Dr. Isaac Samuel. The endorsement of this Order by counsel is waived pursuant to Rule 1:13 of the Rules of the Supreme Court of Virginia. The clerk is requested to send an attested copy of this Order to counsel of record.