PRESENT:  All the Justices

RICHARD D. FIORUCCI, ET AL.
                                        OPINION BY
v.  Record No. 131869        JUSTICE ELIZABETH A. McCLANAHAN
                                      OCTOBER 31, 2014
STEPHEN CHINN

            FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
                        James C. Clark, Judge

        In this medical malpractice action, Richard D. Fiorucci,

D.D.S. and Richard D. Fiorucci, D.D.S., Ltd. (collectively "Dr.

Fiorucci") appeal from the judgment of the circuit court

entered in accordance with a jury verdict rendered in favor of

Stephen Chinn.  Dr. Fiorucci contends that the circuit court

erred in excluding evidence of the risk of surgery discussions

between Dr. Fiorucci and Chinn.  We will affirm the judgment of

the circuit court.

                          I.  BACKGROUND

        Chinn was referred by his dentist to Dr. Fiorucci, an oral

maxillofacial surgeon, for evaluation of three wisdom teeth,

all of which were fully impacted in the bone.  Dr. Fiorucci

determined that Chinn's wisdom teeth were decaying and

recommended extraction.  Dr. Fiorucci extracted Chinn's upper

left wisdom tooth but perforated the bone adjacent to the left

sinus leaving a large opening in the sinus.  He attempted the

extraction of Chinn's lower left wisdom tooth but encountered

severe bleeding and halted the surgery, leaving part of the

tooth and the root.  He did not attempt extraction of the third tooth.  Following the surgery, Chinn experienced bleeding from the nose, numbness in his left jaw, teeth, gum, lip, and chin, as well as pain in his left sinus.  Although the symptoms related to the extraction of the upper left wisdom tooth resolved after several weeks, the symptoms related to the attempted extraction of the lower left wisdom tooth did not resolve, resulting in permanent numbness of Chinn's lower left jaw area.[1]

Chinn contended that Dr. Fiorucci was negligent in failing to properly diagnose the condition of his wisdom teeth and in recommending and performing the extractions.[2]  According to expert testimony presented by Chinn at trial, Dr. Fiorucci misdiagnosed Chinn's wisdom teeth as being decayed when in fact they were in a benign resorption process, meaning they were in the harmless process of being incorporated into the surrounding bone.  Thus, according to Chinn's experts, Dr. Fiorucci breached the applicable standard of care in misdiagnosing the

---

[1] Expert testimony presented by Chinn established that the inferior alveolar nerve was damaged during the extraction of the lower left wisdom tooth.  Although Chinn subsequently underwent surgery by a different surgeon to remove the remnant of this tooth and root, the numbness in his left jaw area did not resolve.

[2] Chinn did not allege that Dr. Fiorucci failed to inform him of the risks of the extractions or that he was unaware of any particular risks.

condition of the teeth and proceeding to recommend and perform unnecessary surgery.[3]

Prior to trial, Chinn filed a motion in limine to exclude two informed consent documents he signed and the related risk of surgery discussions between Dr. Fiorucci and Chinn. The informed consent documents described the risks and potential complications of the surgery, which included the risks of injury to the nerve, opening of the sinus, and permanent numbness. The circuit court granted the motion without prejudice to Dr. Fiorucci to raise the discussions at trial if they became relevant.[4] During trial, Dr. Fiorucci sought to introduce the risk of surgery discussions, arguing that Chinn placed the issue of informed consent at issue during voir dire and through testimony of one of Chinn's experts. The circuit court ruled that the risk of surgery discussions were not relevant and precluded their admission into evidence.

---

[3] Chinn's experts also testified that Dr. Fiorucci breached the applicable standard of care in other respects, specifically, in proceeding with the extraction of the upper left wisdom tooth despite the fact that the roots of the tooth were fused to the bone; in proceeding with the extraction of the lower left wisdom tooth despite its proximity to the alveolar nerve canal; and in failing to make a prompt referral to a neurosurgical specialist.

[4] Judge Lisa B. Kemler presided over the hearing on the motion in limine and entered the order granting the motion.

The jury rendered a verdict for Chinn, which was confirmed by the circuit court.

## II. ANALYSIS

On appeal, Dr. Fiorucci argues that our decision in Wright v. Kaye, 267 Va. 510, 529, 593 S.E.2d 307, 317 (2004), holding that risk of surgery discussions were inadmissible in a medical malpractice trial, does not apply because Chinn's claim was based on pre-operative negligence.

In Wright, we reversed the circuit court's denial of a motion in limine to exclude discussions between the physician and patient as to risk of injury where the patient claimed the physician negligently performed a medical procedure. We explained that "evidence of information conveyed to [the patient] concerning the risks of surgery in obtaining her consent is neither relevant nor material to the issue of the standard of care" in performing the surgery. Id. Recognizing that the patient's awareness of the risks of surgery is not a defense available to a physician against a claim of deviation from the standard of care, we stated that while a patient may consent to risks of surgery, a patient "does not consent to negligence." Id. Thus, where lack of informed consent is not at issue, "the admission of evidence concerning a plaintiff's consent could only serve to confuse the jury because the jury could conclude, contrary to the law and the evidence, that

4

consent to the surgery was tantamount to consent to the injury which resulted from that surgery."  Id.

While the patient's claim in Wright related to negligent performance of a medical procedure, our holding applies equally to claims premised on pre-operative negligent treatment, specifically including negligent diagnosis.  Chinn's awareness of the risks of the extractions was not a defense against his claim that Dr. Fiorucci deviated from the standard of care in misdiagnosing the condition of Chinn's wisdom teeth or negligently performing the surgery.[5]  Therefore, evidence of the informed consent discussions between Dr. Fiorucci and Chinn were "neither relevant nor material to the issue of the standard of care."  Id.  Accordingly, the circuit court's denial of Dr. Fiorucci's motion in limine to exclude such discussions from the evidence at trial was not error.

We further reject Dr. Fiorucci's contention that Chinn placed the risk of surgery discussions in issue at trial. During voir dire, Chinn's counsel asked potential jurors

---

[5] Dr. Fiorucci's position at trial was that because Chinn had the option to forego the extractions, his awareness of the risks was relevant to his choice.  This position, however, is no different from asserting that Chinn consented to the risks of surgery.  Chinn's "choice" to proceed with Dr. Fiorucci's recommendation to undergo surgery was based on Dr. Fiorucci's misdiagnosis.  While Chinn "may consent to risks, [he] does not consent to [a negligent diagnosis]."  Wright, 267 Va. at 529, 593 S.E.2d at 317.

5

whether "know[ing] that medical and dental procedures involve risks and potential complications," led any juror to conclude that "a dentist or doctor should not be held responsible for an injury that results from his or her negligence."  Furthermore, Dr. Gary Smagalski, one of Chinn's experts, referred to discussions with his own patient regarding probable numbness in the context of explaining why he did not refer his patient to a neurosurgical specialist after the patient experienced numbness following an extraction.[6]  Neither the statement made to the jury during voir dire nor the testimony by Dr. Smagalski regarding his discussion with his own patient implied or suggested that Dr. Fiorucci failed to obtain Chinn's consent or "otherwise place[d] in issue any failure on the part of [Dr. Fiorucci] to obtain [Chinn's] informed consent."  Wright, 267 at 528, 593 S.E.2d at 317.  Thus, the circuit court did not err

---

[6] The issue was actually raised by Dr. Fiorucci, whose counsel asked Dr. Smagalski during his cross-examination to admit that he did not refer the patient to a neurosurgical specialist.  Although Dr. Smagalski testified that it was a completely different situation from that involving Chinn, he was not asked to elaborate.  On re-direct examination, Dr. Smagalski explained that the situation was different in several respects, including that his patient's tooth was badly infected and there was no acute bleeding during the extraction, and, consequently, no indication of nerve injury.  Dr. Smagalski also stated that the patient experienced only partial numbness, went into the situation knowing the probability he would have numbness, and "seemed pretty happy about the treatment."

in excluding from evidence Dr. Fiorucci's risk of surgery discussions with Chinn.

## III.  CONCLUSION

For the foregoing reasons, we will affirm the judgment of the circuit court.

<u>Affirmed.</u>