COURT OF APPEALS OF VIRGINIA

Present: Judges AtLee, Friedman and Frucci
Argued at Norfolk, Virginia

MICHAEL VINES, AS ADMINISTRATOR OF
  THE ESTATE OF JAMES C. VINES, JR.

                                MEMORANDUM OPINION[*] BY
v.       Record No. 0174-24-1            JUDGE FRANK K. FRIEDMAN
                                  APRIL 29, 2025

NATALIE TAYLOR, PA-C

FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Joseph C. Lindsey, Judge

W. Charles Meltmar (The Cochran Firm, on brief), for appellant.

Ronald P. Herbert (Haley D. Santos; Harman, Claytor, Corrigan &
Wellman, on brief), for appellee.

Michael Vines, as Administrator of the Estate of James C. Vines, Jr. (James), appeals the

circuit court's order dismissing his medical malpractice suit following the jury's verdict in favor

of Natalie Taylor. Vines argues that the circuit court erred by permitting expert testimony on the

standard of care because the expert had no experience treating patients in a nursing home setting.

Finding no error, we affirm the circuit court's judgment.

BACKGROUND[1]

James was admitted into Windsor Facility Operations, LLC (Windsor), a nursing home,

for short-term rehabilitation following his hospitalization for pneumonia. The 77-year-old

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Under settled appellate principles, we state the facts in the light most favorable to the prevailing party in the trial court. "The party who successfully persuades the factfinder 'is entitled [on appeal] to have the evidence viewed in the light most favorable to her, with all conflicts and inferences resolved in her favor.'" *McCants v. CD & PB Enters., LLC*, 303 Va. 19, 22 (2024) (alteration in original) (quoting *Chacey v. Garvey*, 291 Va. 1, 8 (2015)).

resided in Windsor for approximately two weeks. Taylor worked at Windsor as a physician assistant during James's residency. She examined James twice. Each time, Taylor concluded that James did not meet the criteria to test for *clostridium difficile* (*C. diff.*), a gastrointestinal disease.[2] On the same day he was discharged from Windsor, James reported to the hospital because he had a fever.[3] Several days later, James again sought hospital treatment for on-going symptoms. James was diagnosed with *C. diff.* during his third visit to the hospital. A week later, James underwent further procedures, but he subsequently developed a fever and died from sepsis.

Vines, as administrator of James's estate, sued Taylor, alleging that her failure to test for *C. diff.* constituted medical malpractice.[4] At trial, Vines presented expert testimony opining that Taylor's treatment violated the standard of care and caused James's death.

Dr. William A. Petri, Jr., a *C. diff.* treatment expert, testified for Taylor. Petri has both a medical degree and a Ph.D. in microbiology. In 1988, he received his medical license with a specialty in infectious diseases. At the time of trial, Petri was a professor at the University of Virginia; he taught courses in the Departments of Medicine, Microbiology, and Pathology. Petri testified that he also advised other healthcare providers regarding infectious diseases and personally had diagnosed and treated patients with infectious diseases, including *C. diff.*, at the UVA hospital. Petri participated in a "major research program" on *C. diff.* sponsored by the National Institutes of Health and has received an award from the National Foundation for Infectious Diseases for his research and clinical care. He has written numerous scholarly works,

---

[2] The parties disagree on the nature and extent of James's symptoms while residing in Windsor; we need not address this dispute to resolve the appeal.

[3] He also reported loss of appetite and "some" diarrhea over the last several days.

[4] Vines also sued Windsor, but settled and dismissed it from the suit before trial.

served on editorial boards to peer-review academic medical articles, and holds 41 patents, 10 of which applied to *C. diff.* treatment.

Petri testified that the diagnosis and treatment of *C. diff.* does not change between a hospital and nursing home environment. Petri stated that he had experience treating patients who arrived from nursing homes, but that he did not treat patients in nursing home settings. Vines objected to Petri opining on the standard of care, arguing that he had no "experience caring for a patient in a nursing home setting." The circuit court overruled Vines's objection and permitted Petri's testimony. Petri then opined that Taylor's treatment of James satisfied the standard of care.[5]

The jury found in Taylor's favor. Accordingly, the circuit court entered judgment for Taylor and dismissed the case. Vines appeals, arguing the circuit court erred in permitting Petri's testimony.

## ANALYSIS

Under Code § 8.01-581.20, a witness may testify as a medical expert if he "demonstrates expert knowledge of the standards of the defendant's specialty" and has had an "active clinical practice in either the defendant's specialty or a related field of medicine within one year of the date of the alleged act." Admitting "expert testimony is a matter within the sound discretion of the trial court, and we will reverse the trial court's judgment only when the [trial] court has abused this discretion." *Toraish v. Lee*, 293 Va. 262, 268 (2017) (quoting *Keesee v. Donigan*, 259 Va. 157, 161 (2000)). Specifically, as the Supreme Court noted in *Holt v. Chalmeta*, 295 Va. 22 (2018), "in an action alleging medical malpractice, we will overturn a trial court's

---

[5] Taylor also presented testimony from an expert nurse practitioner who likewise concluded Taylor satisfied the standard of care.

exclusion of a proffered expert opinion 'when it appears clearly that the witness was qualified.'" *Id.* at 32 (quoting *Perdieu v. Blackstone Fam. Prac. Ctr. Inc.*, 264 Va. 408, 418 (2002)).

I. Petri Met the Actual Knowledge Requirement for the Standard of Care

Relying on *Perdieu*, Vines argues that without any direct experience treating patients in a nursing home, Petri was not qualified to opine on the standard of care in that setting. 264 Va. at 418. *Perdieu* involved a nursing home resident who had suffered two falls close in time; the resident physician examined and diagnosed no injuries during each exam. *Id.* at 411. Later x-rays confirmed that the resident had sustained a hip fracture that was subsequently treated by surgery. *Id.* at 412. At the medical malpractice trial, the circuit court sustained objections to three defense experts: the first because he had no active clinical practice as required under Code § 8.01-581.20; the second because she had only treated acute injuries in a hospital setting and had no experience with long-term care facilities; and the third because he had no active clinical practice and had insufficient experience treating "geriatric patients in a nursing home." *Id.* at 415-16.

On appeal, our Supreme Court held that "we cannot say that the trial court abused its discretion in disqualifying" the experts, because none had experience diagnosing fractures, nursing home patients, or experience outside the "acute-care setting." *Id.* at 420. But that holding did not *require* all testifying experts in cases involving a nursing home resident to have nursing home experience. The abuse of discretion standard is a deferential one. It "draws a line—or rather, demarcates a region—between the unsupportable and the merely mistaken, between the legal error . . . that a reviewing court may always correct, and the simple disagreement that, on this standard, it may not." *Jefferson v. Commonwealth*, 298 Va. 1, 10-11 (2019) (alteration in original) (quoting *Reyes v. Commonwealth*, 297 Va. 133, 139 (2019)). On review, we must defer to the "primary decisionmaker's judgment," *Commonwealth v. Thomas*,

73 Va. App. 121, 127 (2021) (quoting *Lawlor v. Commonwealth*, 285 Va. 187, 212 (2013)), unless "reasonable jurists could not differ" about the correct result, *Commonwealth v. Barney*, 302 Va. 84, 94 (2023).

Code § 8.01-581.20 governs the qualification of expert witnesses in medical malpractice actions, stating:

> Any health care provider who is licensed to practice in Virginia shall be presumed to know the statewide standard of care in the specialty or field of practice in which he is qualified and certified. . . . A witness shall be qualified to testify as an expert on the standard of care if he demonstrates expert knowledge of the standards of the defendant's specialty and of what conduct conforms or fails to conform to those standards and if he has had active clinical practice in either the defendant's specialty or a related field of medicine within one year of the date of the alleged act or omission forming the basis of the action.
>
> The provisions of this section shall apply to expert witnesses testifying on the standard of care as it relates to professional services in nursing homes.

The record reflects that Petri was board certified in both internal medicine and infectious diseases. Thus, Petri was entitled to the presumption that he knew the statewide standard of care. Notably, in *Holt*, 295 Va. at 26, the Supreme Court of Virginia faced a similar situation. There, a board-certified pediatrician and neonatologist with a license to practice in Virginia was qualified as a standard of care and causation expert witness. *Id.* at 27. The issue was whether the witness could testify as to the standard of care in a hospital without a NICU when the pediatrician had only ever worked in hospitals with NICUs. *Id.* The Supreme Court found that the expert could testify, holding that as a board-certified Virginia pediatrician she had a presumption to know the statewide standard of care for pediatricians practicing in Virginia. *Id.* at 33. The Court further held that the expert testified that she was familiar with the standard of care and that the standard of care was the same for all pediatricians regardless of whether the facility had a NICU. *Id.* at 33-34. The holding in *Holt* is directly on point.

- 5 -

Furthermore, the record here is very clear on the fact that Petri had performed the procedures at issue, which was evaluating a patient's condition to determine whether it was appropriate to test for *C. diff.* The record is also clear that Petri testified that he was familiar with the applicable standard of care. He also testified that the standard of care for treating *C. diff.* is the same in a hospital setting as it is in a nursing home. This record supports the circuit court's finding that Petri was qualified to testify on the standard of care for diagnosing and treating *C. diff.*

Thus, we cannot say the trial court abused its discretion in this case.

II. Vines Waived his Active Clinical Practice Requirements Argument

At trial, Vines objected only on the ground that Petri lacked knowledge of the standards for nursing home care. On appeal, Vines now asserts that Petri's employment at UVA did not satisfy the "active clinical practice" requirement under the statute. But "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18. "The purpose of th[e] contemporaneous objection requirement [in Rule 5A:18] is to allow the trial court a fair opportunity to resolve the issue at trial, thereby preventing unnecessary appeals and retrials." *Hogle v. Commonwealth*, 75 Va. App. 743, 755 (2022) (alterations in original) (quoting *Creamer v. Commonwealth*, 64 Va. App. 185, 195 (2015)).

Although Vines objected to Petri's expert knowledge, "[s]pecificity and timeliness undergird the contemporaneous-objection rule, animate its highly practical purpose, and allow the rule to resonate with simplicity." *Id.* (quoting *Bethea v. Commonwealth*, 297 Va. 730, 743 (2019)). "Not just any objection will do. It must be both specific and timely—so that the trial judge would know the particular point being made in time to do something about it." *Id.*

(quoting *Bethea*, 297 Va. at 743).  Vines did not cite Code § 8.01-581.20 or argue that Petri's employment did not qualify as an "active clinical practice" during his trial objection.  "If a party fails to timely and specifically object, he waives his argument on appeal."  *Id.*  Therefore, we cannot consider Vines's "active clinical practice" claim.[6]  Rule 5A:18.[7]

CONCLUSION

For these reasons, we affirm the circuit court's finding that Petri was qualified to testify on the standard of care for diagnosing and treating *C. diff.*

*Affirmed.*

---

[6] Vines does not invoke either exception to Rule 5A:18, and we do not consider them sua sponte.  *Spanos v. Taylor*, 76 Va. App. 810, 828 (2023).

[7] Even if the argument were preserved, Vines still loses on the merits.  All expert witnesses must have "an active clinical practice in either the defendant's specialty or a related field of medicine within one year of the date of the alleged act or omission forming the basis of the action."  Code § 8.01-581.20.  "The phrase 'actual performance of the procedures at issue in this case' is 'not to be given a narrow construction inconsistent with the plain terms of the statute.'"  *Holt*, 295 Va. at 36 (quoting *Wright v. Kaye*, 267 Va. 510, 524 (2004)).  The relevant medical procedure is the examination, diagnosis, and treatment of a patient with a *C. diff.* infection.  Petri testified that he had an active clinical practice and that his practice was in a related field of medicine.  Furthermore, Petri testified that he manages the care of and treats patients with *C. diff.*