## Richmond

David Glenn Williams v. Frances S. Morris, Administratrix,
Etc., Et Al.

December 1, 1958.

Record No. 4825.

Present, All the Justices.

The opinion states the case.

*Ted Dalton and James C. Turk* (*Dalton, Poff & Turk*, on brief), for the plaintiff in error.

*T. Warren Messick* and *C. E. Hunter* (*Julius Goodman; Charles D. Fox, III; Hunter & Fox*, on brief), for Frances S. Morris, Administratrix, etc., and Leroy W. Edwards, defendants in error.

No brief filed on behalf of George Thomas Banks, III.

WHITTLE, J., delivered the opinion of the court.

Frances S. Morris, administratrix of the estate of her husband, William Edward Morris, deceased, filed a motion for judgment against David Glenn Williams, Leroy Ward Edwards, and George Thomas Banks, III, for the alleged wrongful death of her decedent growing out of an automobile accident.

The trial before a jury resulted in a verdict for the plaintiff against defendants Williams and Banks in the sum of $10,000, and a verdict in favor of defendant Edwards.

The court overruled Williams' and Banks' motion to set aside the verdict, and over their objection entered judgment thereon. Upon petition of Williams we granted him a writ of error. Banks sought no appeal and the judgment against him is final.

The three defendants as well as plaintiff's decedent were students at Virginia Polytechnic Institute in Blacksburg. Defendant Williams and the decedent Morris were roommates at the college. Both lived in Rocky Mount. On the morning of April 9, 1955, Williams intended to drive his 1953 MG roadster from Blacksburg to his home. Morris was riding with Williams as his guest. They left the college about 10:00 a.m. with Williams driving and Morris riding in the front seat. They were traveling on U.S. Route 11, which at the scene of the accident is a four-lane divided highway with a grass plot in the center separating the two eastbound lanes from the two westbound lanes. The day was clear and the road was dry.

The evidence discloses that as they were proceeding in an easterly direction, near the western limits of the town of Shawsville, at a speed of approximately 50 miles per hour, a station wagon going in the same direction and driven by Leroy Edwards, attempted to pass them. As the station wagon was in the act of passing, Banks,

who was riding in Edwards' station wagon, yelled at Williams, pointed a water pistol and discharged some water toward the Williams car. Whereupon Williams apparently accelerated the speed of his automobile and attempted to race or outrun the station wagon. On three occasions Williams apparently attempted to cut his car into or "nudge" the station wagon. Losing control of his car, Williams applied his brakes and the car skidded for a distance of 63 feet into an embankment on the south side of the highway. The car was demolished and Morris was killed.

Williams says: "The questions involved on this appeal are [a] whether the court erred in allowing the introduction of plaintiff's Exhibit '3' into evidence; [b] whether the plaintiff as a matter of law failed to make out a case of gross negligence as to the defendant Williams; and [c] whether the court erred in granting certain instructions and refusing to grant others."

■ Exhibit "3"[1] here complained of by appellant Williams pur-

[1] "Monday Morning, April 11, 1955. Statement of Leroy Edwards, 404 Progress Street, Blacksburg, Va. (Home address: Farnham, Va.)

"I was driving a station wagon on Saturday, April 9, 1955, going home for Easter holidays. George T. Banks, III, of Richmond, Va., was with me. I came up behind the automobile involved in the accident, he was running along, according to my speedometer, fifty miles an hour. And I pulled out into the left hand lane to pass him, approximately three or four seconds to pass him, and George [Banks] hollered out of the window at him 'Hey, Glenn' [Williams]. George was the boy riding with me, and Glenn was the boy driving the other automobile. As I came up along side him, I heard the engine of that MG—that's a sport car, speed up and the car seemed to go away from me and I was still in the act of cutting around him, and the car swerved in toward me and I swerved away from him. The window was down on his side (George's side of the car). I don't remember whether I had the window down on my side or not. The window was down on the other car. After I pulled out to pass, to go around him, the only thing that I would say that he did was to holler at him, 'Hey, Glenn'. I know he had one (a squirt gun), but I didn't see him stick it out the window. He had it in his pocket when he got in the car—he showed it to me. I don't remember what the conversation was when we stopped after the wreck. Both of us went back, and the third car coming along behind—there was a nurse in the car, and she hollered to get an ambulance, so I got in my car and drove down to this service station and called for an ambulance. As we were riding along, George had the squirt gun in his hand, and said a lot of the boys in the barracks—the dormitories had them. He said he didn't see how it was possible that the gun could have caused the accident, due to the fact that he knew the other boys, and he said that when he hollered the other boy turned around and looked at him. He said he squirted it one time out of the car.

"Q. Did Glenn Williams, the man driving the other car, did he do anything, playing or anything with Mr. Banks when you all passed the other car?

"A. That I couldn't say. The only thing I heard was when he called, 'Hey, Glenn'. I didn't hear an answer."

ports to be a statement made by defendant Edwards on Monday morning following the accident on Saturday. The statement was not signed, not made under oath and not made in the presence of Williams. It was allegedly transcribed (without Edward's knowledge) at the request of the attorney for the Commonwealth (now of counsel for plaintiff) in connection with his investigation of a proposed criminal action against Banks.

The statement was first sought to be introduced by calling the Commonwealth's attorney's secretary who recorded and transcribed it. When objection was interposed, plaintiff's attorney had the secretary stand aside momentarily and called Edwards as an adverse witness. He was asked to read the statement and see if it was a correct transcription of what he had said. Edwards' reply indicated he was not sure that it was the statement he made and he pointed out two sentences which he said he could not have made. The plaintiff then sought to introduce the writing as an exhibit, and the same was admitted as Exhibit "3" over the vigorous objection of the defendants.

The record discloses that the trial judge apparently took the view that the typed statement was admissible as an exhibit against all three defendants because it was made within two days after the accident which had occurred approximately two years before the trial. After the statement had been admitted the secretary was called to the stand and, over the objection of Williams, read the statement to the jury.

It was argued before us and not controverted that the jury took the exhibit to their room when considering their verdict. After trial it was discovered that the following portion of the typewritten statement had been underscored: "As I came up along side him [Williams] I heard the engine of that MG—that's a sport car, speed up and the car seemed to go away from me and I still was in the act of cutting around him and the car swerved in toward me and I swerved away from him."

Williams complains that the exhibit, as to him, was purely hearsay and therefore inadmissible. He argues that its admission was highly prejudicial to his defense. Under the related circumstances, we conclude that his position is well taken.

Heresay evidence has been defined as evidence which derives its value, not solely from the credit to be given the witness on the stand, but in part from the veracity and competency of some other person.

It is primarily testimony which consists in a narration by one person of matters told him by another. Webster's New International Dictionary, Second Edition; 20 Am. Jur., Evidence, § 451, page 400. A clear example of hearsay evidence is where a witness testifies to the declaration of another for the purpose of proving the facts asserted by the declarant. 20 Am. Jur., Evidence, § 454, page 403; 7 Mich. Jur., Evidence, § 195, page 579. Statements otherwise objectionable as hearsay are not rendered admissible because they have been reduced to writing. 31 C. J. S., Evidence, § 194, page 930; 7 Mich. Jur., Evidence, § 199, page 582.

It cannot be contended that as to Williams the secretary could have been introduced as a witness in chief, before Edwards testified, and asked what she heard Edwards say on the former occasion. She might have been recalled in rebuttal against Edwards for the purpose of showing (if such be the case) that his testimony at the trial was contrary to his statement made to plaintiff's attorney two days after the accident. But such testimony would not be admissible against Williams.

It is urged by appellee that even if error was committed by the introduction of Exhibit "3", such error was harmless in that Edwards later testified in the case, was cross-examined regarding the exhibit and in the main his evidence coincided with the statement.

We cannot say that such error was harmless under the related circumstances. The exhibit was handed to the jury, taken by them to their room, and thus accorded added significance. When the exhibit was introduced no part of it was underscored. Yet when the papers were examined after the trial it was discovered that the portion of the statement heretofore quoted was underscored. This points to the apparent emphasis placed upon the exhibit by the jury. We conclude that its admission constituted reversible error as to Williams.

Williams' assignment that the plaintiff as a matter of law failed to make out a case of gross negligence against him is without merit. The record is replete with evidence which, if believed by the jury, would convict him of gross negligence. It indicates that when Edwards attempted to pass, instead of giving way to the right in favor of the vehicle and not increasing his speed until Edwards passed as the law directs (Code, § 46-227), Williams accelerated the speed of his automobile and attempted to race or outrun the station wagon.

Further, the evidence discloses that instead of operating his car in

his right hand lane (Code, § 46-220), that on three occasions Williams drove his car into the left hand lane occupied by the Edwards vehicle and attempted to bump or "nudge" it. In short, the record would indicate that Williams, while engaging in horseplay with Banks, lost control of his car, applied his brakes, skidding his car for a distance of 63 feet, crashing into the rock embankment, resulting in the accident complained of. Whether or not he was guilty of gross negligence was a question for the jury.

■ Williams next contends that the court's instructions, as they pertained to the liability of defendant Edwards, were too favorable. He insists that if the case is reversed as to him, the judgment in favor of Edwards should also be reversed and Edwards brought back into the case as a co-defendant.

No instructions were included in the printed record; however, we have examined the instructions in the manuscript record, those pertaining to Edwards' theory of the case as well as the other instructions complained of, and we find no error in them. We have also carefully examined the record as it pertains to Edwards and we are of the opinion that the jury was justified in determining that there was no negligence on his part. It is disclosed that during the few seconds in which the horseplay was engaged in between Banks and Williams, Edwards knew nothing of it until an instant before the accident occurred. It is not shown that he participated in the horseplay, and the jury was justified in so finding. *Broudy-Kantor Co. v. Levin*, 135 Va. 283, 290 (head-note 6), 116 S. E. 677.

For the reasons stated the judgment is reversed and the case remanded for a new trial as to appellant Williams.

*Reversed and remanded.*