618 S.E.2d 347

**Alan LUGINBYHL, s/k/a Alan Kurt Luginbyhl**

v.

**COMMONWEALTH of Virginia.**

**Record No. 1333–04–4.**

Court of Appeals of Virginia,
Alexandria.

Aug. 30, 2005.

Benton, J., dissented with opinion.

Michael F. Devine (Devine & Connell, P.L.C., on briefs), for appellant.

Stephen R. McCullough, Assistant Attorney General (Jerry W. Kilgore, Attorney General; Judith Williams Jagdmann, Attorney General, on briefs), for appellee.

Present: BENTON and HALEY, JJ., and ANNUNZIATA, Senior Judge.

ROSEMARIE ANNUNZIATA, Senior Judge.

Alan Luginbyhl was charged with and convicted of driving while intoxicated (DWI) pursuant to Code § 18.2–266. On appeal, he contends his conviction should be reversed because the trial court erred in admitting into evidence a certificate of blood alcohol analysis based on the result obtained from a breath test. Specifically, he argues that admission of the document violated his rights under the Confrontation Clause of the Sixth Amendment. For the reasons that follow, we disagree and affirm his conviction.

## I. Background

In accord with our usual standard of review, we view the evidence and all reasonable inferences flowing from the evidence in a light most favorable to the Commonwealth as the party prevailing in the trial court. *Garcia v. Commonwealth*, 40 Va.App. 184, 189, 578 S.E.2d 97, 99 (2003). So viewed, the evidence [1] establishes that, on November 23, 2003, Luginbyhl drove his car out of a parking lot and for a few moments remained perpendicular to the lanes of travel, blocking the

---

1. In lieu of a transcript, the parties submitted an agreed Statement of Facts pursuant to Rule 5A:8.

oncoming traffic. Several cars had to brake abruptly in order to avoid hitting Luginbyhl before he slowly turned his vehicle to the right. He began "weaving" as he continued driving down the road, missing the curb "by approximately two inches." Approaching vehicles had to brake to avoid a collision when Luginbyhl slowly turned left into a shopping center.

Fairfax County Police Officer Darren Day witnessed Luginbyhl's erratic driving and effected a traffic stop. Day detected a strong odor of alcohol emanating from Luginbyhl and noticed that his eyes were glassy and bloodshot, that his face was red, and that he exhibited sluggish motor skills. As Luginbyhl exited his vehicle, he began to fall forward, requiring Day to provide support. Asked how much alcohol he had had to drink, Luginbyhl responded, "I had a lot." He further admitted consuming "6, 7 or 8 vodka drinks."

Luginbyhl was unable to successfully perform two field sobriety tests: the "finger-to-nose test" and the "one-legged stand test." In the course of trying to complete the latter, Luginbyhl began to cry and stated, "I'm drunk; I'm an alcoholic." Day thus placed Luginbyhl under arrest and took him to a police substation where a breath test was conducted.

Although Day was present and observed Luginbyhl take the breath test, he did not administer it. Day explained that his license to operate the breath test machine expired a year earlier.

The trial judge admitted the breath test certificate over Luginbyhl's Sixth Amendment objections. The breath test certificate indicates that Officer Edward A. Caine administered the test and that Luginbyhl's blood alcohol content was 0.24 grams per 210 liters of breath. The certificate also contains the following preprinted attestation:

I CERTIFY THAT THE ABOVE IS AN ACCURATE RECORD OF THE TEST CONDUCTED; THAT THE TEST WAS CONDUCTED WITH THE TYPE OF EQUIPMENT AND IN ACCORDANCE WITH THE METHODS APPROVED BY THE DEPARTMENT OF CRIMINAL JUSTICE SERVICES, DIVISION OF FO-

RENSIC SCIENCE; THAT THE TEST WAS CONDUCTED IN ACCORDANCE WITH THE DIVISION'S SPECIFICATIONS; THAT THE EQUIPMENT ON WHICH THE BREATH TEST WAS CONDUCTED HAS BEEN TESTED WITHIN THE PAST SIX MONTHS AND FOUND TO BE ACCURATE; THAT PRIOR TO ADMINISTRATION OF THE TEST THE ACCUSED WAS ADVISED OF HIS RIGHT TO OBSERVE THE PROCESS AND SEE THE BLOOD ALCOHOL READING ON THE EQUIPMENT USED TO PERFORM THE BREATH TEST, AND THAT I POSSESS A VALID LICENSE TO CONDUCT SUCH TEST, GIVEN UNDER MY HAND THIS _25TH_ DAY OF _NOVEMBER,_ 20_03._

Officer Caine signed in the space below the attestation under the words "BREATH TEST OPERATOR." Officer Caine did not testify at Luginbyhl's trial.

Based on the breath test evidence and the testimony of Officer Day, the trial judge found Luginbyhl guilty of DWI and sentenced him to 180 days in jail, 170 of which were suspended on condition of good behavior.

Citing _Crawford v. Washington,_ 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), Luginbyhl argues on appeal that the contents of the breath test certificate constitute "testimonial hearsay" and that the trial court violated his Sixth Amendment right to confront the witnesses against him by admitting the certificate without the testimony of Officer Caine. We interpret his appeal to encompass both components of the breath test certificate: (1) the result of the breath test showing his BAC to be 0.24 and (2) the attestation certifying that the equipment was in good working order and that Officer Caine was licensed to perform the breath test.[2] His appeal raises an issue of first impression in Virginia.[3]

---

**2.** Luginbyhl does not argue on appeal that the Commonwealth failed to sufficiently authenticate the breath test certificate or that it failed to lay a proper foundation for its admission pursuant to Code § 18.2–268.9.

**3.** The United States Supreme Court's decision in _Crawford_ has generated much debate and discussion as to its application to and effect on

We do not agree that the trial court erred in admitting either component of the breath test certificate. We hold that the result of the breath test does not constitute hearsay and therefore does not implicate Luginbyhl's Sixth Amendment rights. We further hold that the statements contained in the certificate attesting to the equipment's good working order and Officer Caine's valid license to operate the machine do not constitute "testimonial" hearsay and are therefore not subject to the rule in *Crawford.*

II. The Result of the Breath Test Does Not Constitute Hearsay and its Admission into Evidence Does Not Implicate Luginbyhl's Sixth Amendment Right to Confrontation

The Sixth Amendment to the United States Constitution provides, in part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the *witnesses* against him." U.S. Const. amend. VI (emphasis added). By its very terms, the constitutional guarantee applies only to *witnesses* against the accused. The guarantee operates by preventing the admission of witness testimony through hearsay evidence at trial unless the prosecution shows that the hearsay declarant (witness) is unavailable and that the accused had a prior opportunity to cross-examine the hearsay declarant. *Crawford,* 541 U.S. at 53–54, 59, 124 S.Ct. at 1365–66. The guarantee does not apply to evidence that is not hearsay. *Id.* at 61, 124 S.Ct. at 1370.

Virginia has described hearsay evidence as

"evidence which derives its value, not solely from the credit to be given the witness on the stand, but in part from the

admitting various types of evidence. *See generally* Major Robert W. Best, *To Be or Not to Be Testimonial? That is the Question,* 2005 Army Law. 65 (April 2005); W. Jeremy Counseller, *The Confrontation Clause After Crawford v. Washington: Smaller Mouth, Bigger Teeth,* 57 Baylor L. Rev. 1 (Winter 2005); Chris Hutton, *Sir Walter Raleigh Revived: The Supreme Court Re–Vamps Two Decades of Confrontation Clause Precedent in Crawford v. Washington,* 50 S.D. L. Rev. 41 (2005); John F. Yetter, *Wrestling with Crawford v. Washington and the New Constitutional Law of Confrontation,* Florida Bar J. (October 2004).

veracity and competency of some other person. It is primarily testimony which consists in a narration by one person of matters told him by another. A clear example of hearsay evidence is where a witness testifies to the declaration of another for the purpose of proving the facts asserted by the declarant."

*Wright v. Kaye*, 267 Va. 510, 530, 593 S.E.2d 307, 318 (2004) (quoting *Williams v. Morris*, 200 Va. 413, 416–17, 105 S.E.2d 829, 832 (1958)). *See Clark v. Commonwealth*, 14 Va.App. 1068, 1070, 421 S.E.2d 28, 30 (1992) (defining hearsay as "a statement, other than one made by the *declarant* while testifying at trial, which is offered to prove the truth of the matter asserted" (emphasis added) (citing *Arnold v. Commonwealth*, 4 Va.App. 275, 279–80, 356 S.E.2d 847, 850 (1987))); *see also Bowman v. Commonwealth*, 28 Va.App. 204, 209, 503 S.E.2d 241, 243 (1998) ("Hearsay is 'testimony given by a *witness* who relates not what he knows personally, but what others have told him or what he has heard said by others.'" (emphasis added) (quoting *Cross v. Commonwealth*, 195 Va. 62, 74, 77 S.E.2d 447, 453 (1953))). *See generally Evans–Smith v. Commonwealth*, 5 Va.App. 188, 197, 361 S.E.2d 436, 441 (1987) (explaining that the "strongest justification for the exclusion of hearsay evidence is that the trier of fact has no opportunity to view the witness on cross-examination and to observe the demeanor of the out-of-court declarant to determine reliability" (citing Charles A. Friend, *The Law of Evidence in Virginia* § 224 (2d ed. 1983))).

 Evidence that is not a statement from a human witness or declarant is not hearsay. *See Tatum v. Commonwealth*, 17 Va.App. 585, 588, 440 S.E.2d 133, 135 (1994) (holding that evidence of numbers displayed on a caller ID system is not hearsay because "there is no 'out-of-court asserter'" and "because the caller ID display is based on computer generated information and not simply the repetition of prior recorded human input or observation"); *Penny v. Commonwealth*, 6 Va.App. 494, 498, 370 S.E.2d 314, 317 (1988) (holding that evidence obtained from a "call trap" device is not hearsay because "the call trap's reliability does not depend on an out-

of-court declarant's veracity or perceptive abilities, and no cross-examination could occur which would enhance the truth-finding process"); *see also Oregon v. Weber*, 172 Or.App. 704, 19 P.3d 378, 381 (2001) (notation of speed on radar photograph "was generated by a machine, and not made by a person," therefore, it "is an assertion not made by a person" and is not hearsay).

The breath test result at issue in this case is not derived from a human declarant or asserter. Rather, the breath test result is generated by a machine and does not depend on the administering police officer's "veracity or perceptive abilities." *See Tatum*, 17 Va.App. at 588, 440 S.E.2d at 135; *Penny*, 6 Va.App. at 498, 370 S.E.2d at 317.

Therefore, the breath test result does not constitute hearsay. That determination is supported by case law from other jurisdictions. In *Stevenson v. State*, 920 S.W.2d 342 (Tex.App. 1996) (*en banc*), the Texas Court of Appeals held:

> The intoxilyzer instrument, in itself, cannot be a declarant. Because the intoxilyzer is not a declarant, the data it generates is not a statement and cannot be hearsay. The fact that the same data is ultimately printed in hard copy does not convert it into hearsay.

*Id.* at 343–44 (citations omitted); *Caldwell v. State*, 230 Ga. App. 46, 495 S.E.2d 308, 310 (1997) (stating that breath test machine "printouts are not hearsay but rather the mechanically-generated reports automatically created by the machine[, and, t]hey do not constitute out-of-court statements by any person or 'the conclusion of a third party not before the court.'" (internal citations omitted)); *State v. Van Sickle*, 120 Idaho 99, 813 P.2d 910, 913 (Ct.App.1991) (holding that "printout from the Intoximeter is not a 'statement' for hearsay purposes," because the printout, "although a writing offered to prove the truth of the matter asserted therein, is not extrajudicial testimony prohibited by the hearsay rule; the printout is a test result produced by a machine"); *State v. Smith*, 312 N.C. 361, 323 S.E.2d 316, 318, 323 (1984) (holding that statutory procedures allowing admission of affidavit by chemical

analyst was "constitutionally permissible procedure attuned to scientific and technological advancements which have insured reliability in chemical testing for blood alcohol concentration," and such "procedure does not violate the accused's right to confrontation"; observing that "breathalyzer procedure now available for objectively determining blood alcohol concentration lends itself to the somewhat startling conclusion that 'in reality the witness against the defendant, the source of the crucial and incriminating evidence, is not the analyst, but the machine itself' "); *see also* Friend, *The Law of Evidence in Virginia* § 18–5 (6th ed. 2003).

Because the breath test result is not hearsay, Luginbyhl's Sixth Amendment right to confrontation is not implicated. *See generally Crawford,* 541 U.S. at 51–53, 124 S.Ct. at 1364– 65 (explaining that the test of the Sixth Amendment and the history underlying common-law right of confrontation reflects an "acute concern with a specific type of out-of-court statement," listing examples of the "core class of 'testimonial' statements" and specifying "testimonial hearsay"); *see also United States v. Restrepo,* 994 F.2d 173, 183 (5th Cir.1993); *United States v. Herndon,* 536 F.2d 1027, 1029 (5th Cir.1976); *Johnson v. State,* 289 Ark. 589, 715 S.W.2d 441, 443 (1986); *Van Sickle,* 813 P.2d at 913; *Evans v. State,* 499 So.2d 781, 783 (Miss.1986); *State v. Williams,* 913 S.W.2d 462, 465 (Tenn.1996). Therefore, Luginbyhl's Sixth Amendment challenge to the trial court's admission of the breath test result into evidence fails.

III. The Statements in the Breath Test Certificate Attesting to the Machine's Good Working Order and the Officer's Valid License to Operate the Machine Do Not Constitute "Testimonial" Hearsay under *Crawford*

■ Unlike the breath test result, Officer Caine's statements on the breath test certificate constitute hearsay because they are assertions made by an out-of-court human declarant and were offered to prove the truth of the matters asserted, namely, that the breath test device worked properly and that Officer Caine was licensed to operate it. *See* Code § 18.2–

268.9 (providing, in pertinent part, that a certificate of breath analysis "shall be admissible as evidence of the facts therein stated and of the results of such analysis" provided the "individual" conducting the breath test attests, *inter alia,* "that the test was conducted in accordance with the Division's specifications, the equipment on which the breath test was conducted has been tested within the past six months and has been found to be accurate"); *Clark,* 14 Va.App. at 1070, 421 S.E.2d at 30 (defining hearsay as "a statement, other than one made by the declarant while testifying at trial, which is offered to prove the truth of the matter asserted"); *see also Anderson v. Commonwealth,* 25 Va.App. 26, 33, 486 S.E.2d 115, 118 (1997) (Benton, J., concurring in part, dissenting in part) (referring to Code § 18.2–268.9 "as an exception to the rule against hearsay").

█ Because Officer Caine's statements constitute hearsay and because he did not testify at trial, Luginbyhl did not have the opportunity to cross-examine him to test the veracity of his statements. Luginbyhl's inability to "confront" a hearsay declarant raises a valid Sixth Amendment concern that we must address. *See generally Crawford,* 541 U.S. at 51–60, 69, 124 S.Ct. at 1364–69, 1374 (recognizing and analyzing testimonial and nontestimonial hearsay). We conclude, however, that the admission of the statements into evidence did not violate Luginbyhl's Sixth Amendment right to confrontation because the statements are not "testimonial" in nature. A review of the law prior to the Supreme Court's decision in *Crawford* and of the historical analysis undertaken by the Court in *Crawford* is necessary to understand the significance and reasoning of our determination that the statements are not testimonial in nature.

In 1980, the Supreme Court held in *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), that the Sixth Amendment right to confrontation limits the state's ability to use hearsay testimony against a criminal defendant. The Court announced the following rule in *Roberts:*

[W]hen a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that he is unavailable. Even then, his statement is admissible only if it bears adequate "indicia of reliability." Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness.
*Id.* at 66, 100 S.Ct. at 2539. Courts have employed the rule in *Roberts* for almost twenty-five years.

Recently, however, the Supreme Court overruled *Roberts*. After conducting an extensive historical analysis of the Confrontation Clause in *Crawford,* the Supreme Court determined that the rule in *Roberts* is overly broad and flawed. The Court stated that, although the *Roberts* reliability test advances the goal of the Confrontation Clause to ensure the reliability and trustworthiness of out-of-court statements, the clause secures a procedural, rather than a substantive, right. *Crawford,* 541 U.S. at 61, 124 S.Ct. at 1370. Thus, the Court held that the Confrontation Clause demands "not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination." *Id.*

In determining what sort of evidence the Sixth Amendment subjects to the "crucible of cross-examination," the Supreme Court stated that the text of the amendment makes clear that it "applies to 'witnesses' against the accused—in other words, those who 'bear testimony.' " *Id.* at 51, 124 S.Ct. at 1364 (quoting 1 N. Webster, *An American Dictionary of the English Language* (1828)). The critical question in the instant case, therefore, is whether the statements in the breath test certificate qualify as testimonial.

The Supreme Court's discussion in *Crawford* of the historical underpinnings of the Confrontation Clause and the abuses it was designed to prevent shed light on whether the statements in the breath test certificate are testimonial evidence. The Supreme Court noted that

[t]he founding generation's immediate source of the concept [of confrontation] . . . was the common law. English common law has long differed from continental civil law in regard to the manner in which witnesses give testimony in criminal trials. The common-law tradition is one of live testimony in court subject to adversarial testing, while the civil law condones examination in private by judicial officers.

*Id.* at 43, 124 S.Ct. at 1359.

Despite the common-law tradition of requiring live testimony at criminal trials, "England at times adopted elements of the civil-law practice." *Id.* In order to employ these civil law practices and digress from the common law, the crown passed the Marian bail and committal statutes, which "required justices of the peace to examine suspects and witnesses in felony cases and to certify the results to the court." *Id.* at 44, 124 S.Ct. at 1360. That practice was employed in the political trials of the sixteenth and seventeenth centuries, resulting in "[t]he most notorious instances of civil-law examination." *Id.* One of the most notable trials was the treason trial of Sir Walter Raleigh, in which incriminating testimony given by Lord Cobham during an examination before the Privy Council was allowed to be read into evidence. *Id.* at 44–45, 124 S.Ct. at 1360–61.

Over time, England's lapses into the civil-law practice of allowing testimony derived from out-of-court examinations in criminal trials came to be seen as abuses. *See id.* at 44, 124 S.Ct. at 1360 (noting that "[o]ne of Raleigh's trial judges later lamented that 'the justice of England has never been so degraded and injured as by the condemnation of Sir Walter Raleigh'" (citing 1 D. Jardine, *Criminal Trials* 520 (1832))). Thus, "[t]hrough a series of statutory and judicial reforms" enacted in the seventeenth and eighteenth centuries, "English law developed a right of confrontation that limited these abuses," *id.* at 44, 124 S.Ct. at 1360, such that "by 1791 (the year the Sixth Amendment was ratified) courts were applying the cross-examination rule even to examinations by justices of the peace in felony cases," *id.* at 46, 124 S.Ct. at 1361.

Notwithstanding the common law's adoption of the right to confrontation, the failure of the United States Constitution as ratified in 1789 to guarantee a right to confrontation troubled anti-federalists who feared that, without such a guarantee, the civil-law practice of allowing accusatory out-of-court testimony could become the norm in criminal prosecutions. *See id.* at 49, 124 S.Ct. at 1362–63. "The First Congress responded [to these fears] by including the Confrontation Clause in the proposal that became the Sixth Amendment." *Id.*

Against this historical backdrop, the true meaning of the Sixth Amendment's Confrontation Clause comes into focus.

> [T]he principal evil at which the Confrontation Clause was directed was the civil-law mode of criminal procedure, and particularly its use of *ex parte* examinations as evidence against the accused. It was these practices that the Crown deployed in notorious treason cases like Raleigh's; that the Marian statutes invited; that English law's assertion of a right to confrontation was meant to prohibit; and that the founding-era rhetoric decried. The Sixth Amendment must be interpreted with this focus in mind.

*Id.* at 50, 124 S.Ct. at 1363.

Thus, the "testimonial" evidence to which the Sixth Amendment applies must be interpreted in light of the primary evil at which the amendment is directed. Although the Supreme Court expressly left "for another day any effort to spell out a comprehensive definition of 'testimonial,'" *id.* at 68, 124 S.Ct. at 1374, and noted that other "formulations of this core class of 'testimonial' statements exist," *id.* at 51, 124 S.Ct. at 1364,[4]

---

4. Citing the parties' briefs and a concurring opinion in *White v. Illinois,* 502 U.S. 346, 365, 112 S.Ct. 736, 747, 116 L.Ed.2d 848 (1992) (Thomas, J., joined by Scalia, J., concurring in part and concurring in judgment), written by Justice Thomas, the Court delineated the following formulations: (1) *"ex parte* in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially"; (2) "extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions"; and (3) "statements that were made under

it expressly adopted the following two examples of evidence it considers to be testimonial: (1) "prior testimony at a preliminary hearing, before a grand jury, or at a former trial," and (2) statements garnered from witnesses during "police interrogations." *Id.* These instances are testimonial in nature, the Supreme Court reasoned, because they bear the most resemblance "to the abuses at which the Confrontation Clause was directed." *Id.* at 68, 124 S.Ct. at 1374. Where testimonial hearsay statements are at issue, the Supreme Court held that the Sixth Amendment bars their introduction into evidence unless the prosecution shows that the hearsay declarant is unavailable and that the accused had a prior opportunity to cross-examine the hearsay declarant. *Id.*

Here, it is not disputed that the Commonwealth failed to show that Officer Caine was unavailable or that Luginbyhl had no prior opportunity to cross-examine him. However, applying the reasoning of the Supreme Court in *Crawford,* we conclude that the Commonwealth did not have to show unavailability and a prior opportunity for cross-examination because the statements contained in the breath test certificate are not "testimonial." Two rationales support our conclusion.

First, Officer Caine's statements in the affidavit do not resemble the types of statements identified by the Supreme Court as testimonial. They are not "prior testimony at a preliminary hearing, before a grand jury, or at a former trial" and are not statements obtained from a witness during a "police interrogation." *See id.* at 52, 124 S.Ct. at 1364–65.

Second, the statements bear little or no resemblance to the evils at which the Confrontation Clause was directed. *Id.* at

---

circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Id.* at 51–52, 124 S.Ct. at 1364 (citations omitted). Because the Supreme Court did not expressly adopt any of these formulations or use them in its analysis, we decline to rely on them here. *See People v. Taulton,* 129 Cal.App.4th 1218, 1224, 29 Cal.Rptr.3d 203, 205, 2005 Cal.App. Lexis 877, *7 (2005) (noting that "nothing in *Crawford* compels the conclusion that, by quoting a statement from a brief, the court intended to adopt its language as the test for determining whether a statement is 'testimonial' ").

51, 124 S.Ct. at 1364 (noting that "not all hearsay implicates the Sixth Amendment's core concerns"). Namely, the statements do not accuse Luginbyhl of any wrongdoing, the common thread among the hearsay identified by the Court as the primary concern of the Sixth Amendment. *See id.* at 43, 124 S.Ct. at 1359 (Historically, "[t]he right to confront one's *accusers* is a concept that dates back to Roman times."), and at 51 (principal evil at which the Clause was directed was use of *ex parte* examinations as evidence against the accused); *see also* U.S. Const. amends. VI and XIV ("[i]n all criminal prosecutions, the accused shall enjoy the right to ... be confronted with the witnesses against him"); Va. Const. art. 1, § 8 ("in criminal prosecutions a man hath a right ... to be confronted with the accusers and witnesses"); *Napier v. State,* 827 N.E.2d 565, 569 (Ind.Ct.App.2005) (*en banc*) (finding that breath test instrument certification and operator certification documents "bear[ ] no similarity to the type of evidence that the Supreme Court labeled as testimonial" in *Crawford* and do not fall within the rule announced in that case; noting that "an operator's certification does not have a bearing on the issue of guilt or innocence"); *State v. Carter,* 2005 MT 87, P38, 326 Mont. 427, 433–34, 114 P.3d 1001, 1005, 2005 Mont. Lexis 153, 21–22 (Apr. 5, 2005) (finding certification reports are nontestimonial hearsay under *Crawford* and not substantive evidence of a particular offense, but rather foundational evidence for admission of substantive evidence); *State v. Cook,* 2005 WL 736671 *3, 2005 Ohio App. Lexis 1514 (Mar. 31, 2005) ** 8–9 (certification records "bear no similarities to the types of evidence the Supreme Court labeled as testimonial" in *Crawford*); *accord Brown v. State,* 268 Ga. 76, 485 S.E.2d 486, 488–89 (1997) (finding breath testing device certificates, like radar device certificates, merely a memorandum of the equipment's accuracy "as opposed to the opinionative quality of the testing performed"; also explaining, "although these certificates are used in litigation, that is not their sole purpose or function" and they "are not made in response to litigation against any one particular individual"); *Jackson v. State,* 233 Ga.App. 568, 504 S.E.2d 505, 508 (1998) (admission of certificate of inspec-

tion of breath test machine did not violate Confrontation Clause because "the declarant is not a witness 'against' a criminal defendant within traditional constitutional analysis"). Rather, the statements are neutral in character, relating only to the operation of the machine and the qualifications of the officer administering the test. The contrast between these statements and the statements of Lord Cobham admitted at Raleigh's trial could not be more patent. *See Crawford*, 541 U.S. at 44, 124 S.Ct. at 1360. Thus, we conclude that the statements contained in the breath test certificate relating to the machine's good working order and the qualifications of the administering officer do not "bear testimony" against the accused within the meaning of the Sixth Amendment.

Guided by the Supreme Court's decision in *Crawford* and the historical context in which it was rooted, as well as the reasoning of appellate courts in other states, we hold that the statements in the breath test certificate relating to the machine's good working order and the administering officer's qualifications are not testimonial statements. Because the statements are not testimonial, the Commonwealth did not have to make the foundational showing that Officer Caine was unavailable and that Luginbyhl had a prior opportunity to cross-examine him.

## V. The Statements in the Breath Test Certificate Were Properly Admitted Pursuant to Code § 18.2–268.9

██ Although the statements in the breath test certificate are not testimonial, we still must answer whether, as nontestimonial hearsay, their admission violated Luginbyhl's Sixth Amendment right to confrontation. We believe that the Court in *Crawford* provided a definitive answer to that question.

The Supreme Court concluded its opinion in *Crawford* by stating the following: "Where nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law—as does *Roberts*, and as would an approach *that exempted such [nontestimonial] statements from Confrontation Clause scrutiny altogether.*" *Id.* at 68, 124 S.Ct. at 1374

(emphasis added). The Court's conclusion that the Constitution affords states flexibility in their treatment of nontestimonial hearsay is consistent with its earlier determination that the Sixth Amendment's primary concern is testimonial hearsay. *See id.* at 50–52, 124 S.Ct. at 1363–65.

In Virginia, the legislature has determined that breath test certificates, and the information they contain, are admissible in court against the accused. Code § 18.2–268.9 provides, in part:

> Any individual conducting a breath test under the provisions of § 18.2–268.2 shall issue a certificate which will indicate that the test was conducted in accordance with the Division's specifications, the equipment on which the breath test was conducted has been tested within the past six months and has been found to be accurate, the name of the accused, that prior to administration of the test the accused was advised of his right to observe the process and see the blood alcohol reading on the equipment used to perform the breath test, the date and time the sample was taken from the accused, the sample's alcohol content, and the name of the person who examined the sample. This certificate, when attested by the individual conducting the breath test, *shall be admissible in any court in any criminal or civil proceeding as evidence of the facts therein stated and of the results of such analysis.*

(Emphasis added.) The legislature's determination that the statements in the breath test are admissible notwithstanding the fact that they are hearsay is wholly consistent with the "flexibility"[5] afforded it by the Constitution and the Supreme Court's decision in *Crawford.*[6] *See People v. Roldan,* 35

---

**5.** According to *Crawford,* the legislature could "exempt such statements from Confrontation Clause scrutiny altogether," *Crawford,* 541 U.S. at 68, 124 S.Ct. at 1374, an action we believe the Virginia legislature has taken with the adoption of Code § 18.2–268.9.

**6.** We are aware that other courts have found that *Crawford* leaves the continuing viability of *Roberts* with respect to nontestimonial hearsay in doubt. The Court of Appeals of South Carolina summed up this view:

Cal.4th 646, 27 Cal.Rptr.3d 360, 110 P.3d 289, 332 n. 25 (2005) (noting that, "[w]here an offered statement is nontestimonial, states may regulate the admission of evidence by applying their hearsay rules without running afoul of the confrontation clause"), *reh'g denied*, 2005 Cal. Lexis 6514 (June 8, 2005).

> "Justice Scalia's opinion [in *Crawford*] hints, but does not decide, that the Confrontation Clause no longer applies to non-testimonial hearsay, and that its admission is governed by a jurisdiction's hearsay rules" and *Roberts'* "indicia of reliability" approach. David F. Binder, *Hearsay Handbook* § 7:2 (4th ed. 2004). Most jurisdictions are leaning toward the idea that *"Crawford* [left] the *Roberts* approach untouched with respect to nontestimonial statements." *United States v. Saget*, 377 F.3d 223, 227 (2d Cir.2004); *see also Horton v. Allen*, 370 F.3d 75, 84 (1st Cir.2004) ("Thus, unless [witness's hearsay] statements qualify as 'testimonial,' *Crawford* is inapplicable and *Roberts* continues to apply.") [, *cert. denied*, —— U.S. ——, 125 S.Ct. 971, 160 L.Ed.2d 905 (2005)]; *State v. Manuel*, 275 Wis.2d 146, 2004 WI App 111, 685 N.W.2d 525, 533 (Wis.Ct.App.2004), *review granted*, 2004 WI 138, 276 Wis.2d 26, 689 N.W.2d 55 (Wis.2004) ("We proceed, in an abundance of caution, to analyze Manuel's confrontation clause claim under the *Roberts* analysis").
>
> *State v. Staten*, 364 S.C. 7, 610 S.E.2d 823, 836 (Ct.App.2005) (alterations in original).
>
> Although we fail to see such ambiguity in light of the Supreme Court's determination that the Constitution allows states to admit nontestimonial hearsay in court and, indeed, exempt it from scrutiny altogether, *Crawford*, 541 U.S. at 68, 124 S.Ct. at 1374, we nonetheless conclude that the statements contained in the breath test certificate would pass muster under *Roberts*.
>
> *Roberts* requires a showing that the hearsay declarant is unavailable and that the hearsay statement falls within a firmly rooted exception to the hearsay rule or otherwise contains particularized guarantees of trustworthiness. The showing of unavailability need only be made " 'when the challenged out-of-court statements were made in the course of a prior judicial proceeding.' " *Parker v. Commonwealth*, 41 Va.App. 643, 651, 587 S.E.2d 749, 753 (2003) (quoting *White*, 502 U.S. at 354, 112 S.Ct. at 741).
>
> The statements at issue in the instant case pass the *Roberts* test for two reasons. First, although the Commonwealth made no showing that Officer Caine was unavailable, it was not required to do so because the statements were not made in the course of a prior judicial proceeding. Second, the statements contained in the breath test certificate—that the machine is in good working order and that the officer is licensed and qualified to administer the test—are particularly trustworthy. The statements are particularly trustworthy because, pursuant to exhaustive administrative regulations found at 6 VAC 20–190–110, *et seq.*, the breath test machine is frequently tested and is operated only by those

We therefore conclude that Luginbyhl's constitutional rights were not infringed by the admission of the nontestimonial statements contained in the breath test certificate.

## VI. Conclusion

We hold that the result of Luginbyhl's breath test contained in the certificate of analysis is not hearsay evidence and, therefore, that its admission into evidence does not implicate his Sixth Amendment right to confrontation. We further hold that statements contained in the breath test certificate relating to the machine's good working order and the administering officer's qualifications do not constitute testimonial hearsay and do not require the Commonwealth to prove, pursuant to *Crawford,* that Officer Caine was unavailable and that Luginbyhl had a prior opportunity to examine him. Accordingly, the trial court did not err in admitting the breath test certificate.[7] Luginbyhl's conviction is therefore affirmed.

*Affirmed.*

BENTON, J., dissenting.

This appeal challenges the admissibility of a certificate of breath analysis containing the attestation of a government employee who did not testify at trial. I would hold that the decision in *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), bars its admission.

The certificate of blood analysis, which was admitted in evidence over a hearsay objection, is signed by a "breath test operator" under the following attestation:

I certify that the above is an accurate record of the test conducted; that the test was conducted with the type of equipment and in accordance with the methods approved by the Department of Criminal Justice Services, Division of

---

who obtain a license to conduct the test after extensive training and testing.

**7.** Because we conclude that the trial court did not err in admitting the breath test certificate, we need not address the Commonwealth's "harmless error" argument.

Forensic Science; that the test was conducted in accordance with the Division's specifications; that the equipment on which the breath test was conducted has been tested within the past six months and found to be accurate; that prior to administration of the test the accused was advised of his right to observe the process and see the blood alcohol reading on the equipment used to perform the breath test, and that I possess a valid license to conduct such test, given under my hand this 25th day of November, 2003.

The majority agrees that the operator's attestation "statements ... constitute hearsay" and that Alan "Luginbyhl did not have the opportunity to cross-examine [the operator] to test the veracity of his statements ... [, raising] a valid Sixth Amendment concern." Yet, the majority conducts its own historical analysis and concludes the statement is not testimonial. I disagree because *Crawford* answers that relevant question.

Examining the historical background of the Sixth Amendment's Confrontation Clause, the Supreme Court in *Crawford* held that "history supports two inferences about the meaning of the Sixth Amendment." 541 U.S. at 50, 124 S.Ct. at 1363.

First, the principal evil at which the Confrontation Clause was directed was the civil-law mode of criminal procedure, and particularly its use of *ex parte* examinations as evidence against the accused.... The Sixth Amendment must be interpreted with this focus in mind.

* * * * * *

The historical record also supports a second proposition: that the Framers would not have allowed admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination. The text of the Sixth Amendment does not suggest any open-ended exceptions from the confrontation requirement to be developed by the courts.

*Id.* at 50, 53–54, 124 S.Ct. at 1363, 1365. In view of this historical analysis, the Supreme Court overruled the reliability

test set forth in *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), because of "its demonstrated capacity to admit core testimonial statements that the Confrontation Clause plainly meant to exclude." *Crawford,* 541 U.S. at 63, 124 S.Ct. at 1371.

In plain terms, *Crawford* describes a "core class of 'testimonial statements'" as including "affidavits," any "similar pretrial statements that declarants would reasonably expect to be used prosecutorially," and "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Id.* at 51–52, 124 S.Ct. at 1364. Simply put, the certificate of blood analysis that was admitted in evidence in this case is testimonial under the narrowest of the *Crawford* definitions and, thus, falls squarely within the *Crawford* bar. As Alan Luginbyhl contends, the "certificate . . . was a formalized, *ex parte* statement made by a government agent for the sole purpose of being used prosecutorially in court in lieu of his live testimony."

It cannot be fairly disputed that the breath analysis and attestation of the operator were conducted solely to provide evidence in court to prove the facts necessary to convict Luginbyhl. Indeed, the attestation statement asserts the existence of seven facts or circumstances said to be true by the "breath test operator." Despite those assertions of facts, the employee of the police department who signed the attestation as the operator was not subject to cross-examination as to any of those circumstances. As the *Crawford* Court noted, the "[i]nvolvement of government officers in the production of testimony with an eye toward trial presents unique potential for prosecutorial abuse—a fact borne out time and again throughout a history with which the Framers were keenly familiar." 541 U.S. at 56 n. 7, 124 S.Ct. at 1367 n. 7.

The majority concludes too summarily, I believe, that the attestation "statements bear little or no resemblance to the evils at which the Confrontation Clause was directed." It seems to me that the use of this type of statement was the

paradigmatic violation the Supreme Court emphasized in *Crawford.* As the Court indicated in its historical analysis, an affidavit or letter from an alleged co-conspirator, Cobham, was read at a treason trial against Sir Walter Raleigh in "[t]he most notorious instance of civil-law examination" in a criminal trial. 541 U.S. at 44, 124 S.Ct. at 1360.

The Raleigh trial itself involved the very sorts of reliability determinations that *Roberts* authorizes. In the face of Raleigh's repeated demands for confrontation, the prosecution responded with many of the arguments a court applying *Roberts* might invoke today: that Cobham's statements were self-inculpatory, that they were not made in the heat of passion, and that they were not "extracted from [him] upon any hopes or promise of Pardon." It is not plausible that the Framers' only objection to the trial was that Raleigh's judges did not properly weigh these factors before sentencing him to death. Rather, the problem was that the judges refused to allow Raleigh to confront Cobham in court, where he would cross-examine him and try to expose his accusation as a lie.

*Id.* at 62, 124 S.Ct. at 1370–71 (citations omitted). Noting that Raleigh was free to confront in court those who read Cobham's letter, the Supreme Court observed, however, that this was an insufficient protection of a right to confrontation because "[l]eaving the regulation of out-of-court statements to the law of evidence would render the Confrontation Clause powerless to prevent even the most flagrant inquisitorial practices." *Id.* at 51, 124 S.Ct. at 1364. In other words, to protect the right of confrontation, Cobham's letter would be inadmissible under the Sixth Amendment because the Confrontation Clause "reflects a judgment, not only about the desirability of reliable evidence (a point on which there could be little dissent), but about how reliability can best be determined." *Id.* at 61, 124 S.Ct. at 1370.

Thus, I disagree with the majority's conclusion that *Crawford* limits the definition of "testimonial" statements to "(1) 'prior testimony at preliminary hearings, before a grand jury, or at a former trial,' and (2) statements garnered from wit-

nesses during 'police interrogations.' " The majority ignores other formulations of "testimonial" statements that *Crawford* expressly includes, such as "extrajudicial statements ... contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions, ... [and] statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." 541 U.S. at 51–52, 124 S.Ct. at 1364. To say that testimonial evidence must meet the narrow definition the majority ascribes to it is to focus on the "form" of the evil, and not the substance, the lack of meaningful confrontation to counter the state's evidence. The majority's conclusion ignores the Supreme Court's premise: "These formulations all share a common nucleus,"—they are statements reasonably expected to be used at trial. *Id.* at 52, 124 S.Ct. at 1364. As such, the Confrontation Clause gives a criminal defendant an absolute right of confrontation to meet this testimonial hearsay evidence.

Even a cursory review of the seven facts the operator certifies demonstrates they are not mere statements generated by a machine, as the majority suggests. For example, the operator attests "that prior to administration of the test the accused was advised of his right to observe the process and see the blood alcohol reading on the equipment used to perform the breath test." The majority's assertion that this evidence is "neutral" does not withstand analysis. It presupposes there was no way to cross-examine the blood test operator, when in fact, there were a number of effective means to cross-examine the operator concerning each of the attestations in the certificate. The certificate proclaimed that the equipment, the record it generated, the breath test, and the operator of the equipment all yielded a result that conformed to statutory requirements and that incriminated Luginbyhl. Without cross-examination, the certificate had the effect of reinforcing the Commonwealth's theory of prosecution. The "crucible of cross-examination" could have exposed any weaknesses in the subjective state of the operator, his perception, the state of the equipment, or the test protocol.

The majority characterizes the operator's statements as "neutral" and "non-accusatory," suggesting a type of safeguard that is intended to render the statements more reliable or trustworthy as evidence. Nothing in *Crawford* declares that the hearsay statement must "accuse [the defendant] of any wrongdoing" to be testimonial or that "statements . . . neutral in character" are nontestimonial. Indeed, nothing within the meaning of "testimonial" equates with "accusatory." Furthermore, it is a dubious conclusion that the prosecutor's evidence could ever be "neutral" in the context of the adversarial system in a criminal proceeding. "The Framers would be astounded to learn that *ex parte* testimony could be admitted against a criminal defendant because it was elicited by 'neutral' government officers." *Crawford,* 541 U.S. at 66, 124 S.Ct. at 1373.

Giving a trial judge the discretion to determine whether a statement is "accusatory" or "neutral" smacks of the "open ended balancing" reliability analysis the Court rejected in *Crawford:* "The *Roberts* test allows a jury to hear evidence, untested by the adversary process, based on a mere judicial determination of reliability . . . [and] replaces the constitutionally prescribed method of assessing reliability with a wholly foreign one." *Id.* at 62, 124 S.Ct. at 1370. The Supreme Court warned that these were the very kinds of "vague" and "manipulable" standards the Framers "were loath to leave . . . in judicial hands." *Id.* at 67, 124 S.Ct. at 1373. Thus, the Court rejected the general concept of "replacing categorical constitutional guarantees with open-ended balancing tests" and held that those tests "do violence to [the Framers'] design." *Id.* at 67–68, 124 S.Ct. at 1373. According to the Supreme Court, the Confrontation Clause "commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination." *Id.* at 61, 124 S.Ct. at 1370. Thus, the Supreme Court explicitly and "once again reject[ed] the view that the Confrontation Clause applies of its own force only to in-court testimony, and that its application to out-of-court statements introduced at trial depends upon 'the law of Evidence for the

time being.' " *Id.* at 50–51, 124 S.Ct. at 1364. These rulings perforce reject injecting a manipulable evidentiary standard to avoid the constitutional command of *Crawford,* which the majority opinion does under the guise of characterizing the evidence as "neutral" or "not accusatory."

The relevant factor under *Crawford* is that this evidence was generated to discover and report evidence against Luginbyhl, the accused. It then was used at trial for that purpose without the opportunity of cross-examination. Furthermore, whether the evidence is accusatory or neutral, it does "bear testimony," 541 U.S. at 51, 124 S.Ct. at 1364; it was prepared for use at trial by a government agent; it was a substitute for an actual witness; and it was admitted in evidence without the opportunity of cross-examination. Simply put, "[a]dmitting statements deemed reliable by a judge is fundamentally at odds with the right of confrontation." *Id.* at 61, 124 S.Ct. at 1370.

The majority opinion cites several appellate courts that have ruled affidavits to be nontestimonial. Other appellate courts, however, addressing this precise issue, have ruled that similar affidavits are testimonial and barred by *Crawford. See, e.g., Shiver v. State,* 900 So.2d 615, 618 (Fla.App.2005) (holding that a breath test affidavit "contained statements one would reasonably expect to be used prosecutorially, . . . was made under circumstances which would lead an objective witness to reasonably believe the statements would be available for trial," and was testimonial); *City of Las Vegas v. Walsh,* 120 Nev. 392, 91 P.3d 591, 595 (2004) (holding that an affidavit "offered to prove certain facts concerning use of certain devices . . . related to determining presence of alcohol" is one prepared for use at trial and is testimonial); *People v. Rogers,* 8 A.D.3d 888, 780 N.Y.S.2d 393 (N.Y.App.Div.2004) (holding that a blood test report "generated by the desire to discover evidence against defendant" was testimonial). In any event, to decide this case, we need not go beyond the text of *Crawford.* Plainly understood, the language in *Crawford* leads to the conclusion that this certificate of analysis is testimonial just as "affidavits . . . the defendant was unable to cross-examine." 541 U.S. at 51,

124 S.Ct. at 1364. As the Supreme Court noted, "[w]here testimonial statements are involved, we do not ... leave the Sixth Amendment's protection to the vagaries of the rules of evidence." *Id.* at 61, 124 S.Ct. at 1370. In other words, "[d]ispensing with confrontation because testimony is obviously reliable is akin to dispensing with jury trial because a defendant is obviously guilty. This is not what the Sixth Amendment prescribes." *Id.* at 62, 124 S.Ct. at 1371.

For these reasons, I would hold that the admission of the document violated Luginbyhl's rights as protected by the Confrontation Clause.